UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOSEPH D. HERNANDEZ,

                              Plaintiff,                    **OPINION AND ORDER**
                                                           **09 CV 5549 (SJF)(WDW)**

              - against-

RICHARD DORMER, Commissioner,
Suffolk County New York Police Department,
JOSEPH BLAETTLER, Commander 2nd Police
Precinct Suffolk County New York Police
Department, THOMAS J. SPOTA, District
Attorney for Suffolk County New York,
"LANIE" ELAINE SHEEHAN-HOUSTON,
Legal Aid Society of Suffolk County New York
Incorporated, JAMES S. BENNETT, Legal Aid
Society of Suffolk County New York
Incorporated, JOHN N. LAUDNER,
Supervising Attorney of Legal Aid Society,
Suffolk County NY Incorporated, ROBERT C.
MITCHELL, Attorney in Charge of the Suffolk
County NY Legal Aid Soc. Incorporated,
DAVID PATTERSON [sic], Governor of the
State of New York, ANDREW J. COMO [sic],
Attorney General of the State of New York,
MICHAEL A. VOPECELLI [sic], Detective,
Suffolk County New York, JOHN DOE # 1,
Michael Vopecelli's Detective Partner on
October 19, 2008 (name as yet unknown),
JOHN DOE # 2, a uniformed SCPD Police
Officer, viewed on the SCPD 2nd Police Station
detention cell video camera(s), PAUL W.
SHAUGHNESSY, resident of Suffolk County
New York, and STEVEN "STEVE" LEVY,
County Executive, Suffolk County New York
Legislature,

                              Defendants.
--------------------------------------------------------X
FEUERSTEIN, J.

        On December 4, 2009, *pro se* plaintiff Joseph D. Hernandez ("plaintiff") commenced this

1

action pursuant to 42 U.S.C. § 1983 against: (1) defendants Richard Dormer ("Dormer"), Commissioner of the Suffolk County Police Department ("SCPD"); Joseph Blaettler ("Blaettler"), Commander of the Second Police Precinct of the SCPD; Thomas J. Spota ("Spota"), District Attorney for Suffolk County New York; Michael A. Volpecelli ("Volpecelli"), i/s/h Michael A. Vopecelli, SCPD Detective; "John Doe # 1," identified only as Michael Volpecelli's Detective Partner on October 19, 2008; "John Doe # 2," identified only as an uniformed SCPD Police Officer viewed on the SCPD Second Precinct Detention Cell Video Camera(s); and Steven "Steve" Levy ("Levy"), County Executive, Suffolk County New York Legislature (collectively, "the County defendants"), (2) defendants "Lanie" Elaine Sheehan-Houston ("Sheehan-Houston"), Legal Aid Society of Suffolk County New York Incorporated ("Legal Aid"); James S. Bennett ("Bennett"), Legal Aid; John N. Laudner ("Laudner"), Supervising Attorney of Legal Aid; and Robert C. Mitchell ("Mitchell"), Attorney in Charge of Legal Aid (collectively, "the Legal Aid defendants"), (3) defendants David Paterson ("Paterson"), i/s/h David Patterson, former Governor of the State of New York; and Andrew J. Cuomo ("Cuomo"), i/s/h Andrew J. Como, former Attorney General of the State of New York (collectively, "the State defendants"), and (4) Paul W. Shaughnessy ("Shaughnessy"), a resident of Suffolk County New York.

The Legal Aid defendants and State defendants separately move pursuant to, *inter alia*, Rules 12(b)(1) and (6) of the Federal Rules of Procedure to dismiss the complaint as against them for lack of subject matter jurisdiction and failure to state a claim, respectively. For the reasons discussed herein, the Legal Aid defendants' motion is granted in part and denied in part and the State defendants' motion is granted.

I.   BACKGROUND

   A.   Factual Allegations[1]

   Plaintiff is a disabled male who was fifty (50) years old at the time he commenced this action. (Complaint [Compl.], ¶ III(E)(1)). At all relevant times, plaintiff resided at 3A Henry Street, apartment second floor east, in Huntington, New York. (Id.) In April 2008, Shaughnessy moved into the apartment across the corridor from plaintiff. (Id.)

   Plaintiff alleges that on October 19, 2008, at approximately 10:15 a.m., Shaughnessy physically and sexually assaulted him in the second floor corridor of their apartment building. (Compl., ¶ III(E)(1)). According to plaintiff, during the assault, he "manage[d] to take hold of a small wall hand held fire extinguisher that [was] mounted on the wall of the corridor * * *[and] stuck [sic] a defensive blow * * * on the left side of [Shaughnessy's] head as * * * Shaughnessy vigorously increased his physical assaults [sic] upon [him]." (Id.) Plaintiff "then struck another defensive blow to defendant Shaughnessy, who then pulled the plaintiff down the staircase, leaving the plaintiff disrobed, injured, and midway lying on that staircase." (Id.) According to plaintiff, "[m]idway on that staircase, defendant Shaughnessy quickly released the plaintiff from his grasp, turned to the plaintiff, smiled and stated, 'Thank You' * * *." (Id.) Shaughnessy then fled the building and two (2) female neighbors called 911 after hearing plaintiff calling for assistance. (Id.) Plaintiff alleges that he suffered a chipped front tooth, lacerations, bruises, injuries to his left knee and right ankle and further injury to "his disabled left arm." (Id.)

   Plaintiff alleges that Volpecelli and his partner, "John Doe #1," arrived at the scene shortly after emergency medical assistance had arrived. (Compl., ¶ III(E)(1)). According to

---

[1] The factual allegations are taken from the complaint and exhibits annexed thereto, and do not constitute findings of fact by the court.

plaintiff, Volpecelli "vociferously and dramatically stated that the area was a crime scene, and proceeded to take a cell telephone photograph(s) of the plaintiff's bite injury(s) to his right forward foreleg." (Id.) Plaintiff further alleges that Volpecelli, his partner and a "uniformed sergeant supervisor did forcefully urge [him] not to go into the ambulance; instead stating that [he] should go to the police station immediately, because [they] stated, 'we want to get this guy.'" (Id.) Plaintiff complied and was driven to the Second Precinct police station while still in his pajamas. (Id.)

Plaintiff alleges that when they arrived at the police station, Volpecelli read him his "Miranda" rights, after which he described the incident. (Compl., ¶ III(E)(2)). According to plaintiff, "Vopecelli [sic] then proceeded with a vociferous line of questioning using profanities as [he] defended the criminal assaults and actions of * * * Shaughnessy." (Id.) Volpecelli then arrested plaintiff and handcuffed him to a table. (Id.) Plaintiff alleges that Volpecelli ignored his repeated request for an attorney "and continued using profanititeies [sic] regarding the plaintiff and his physical disabilities." (Id.) Plaintiff further alleges that Volpecelli took four (4) photographs on his personal cell phone of plaintiff handcuffed. (Id.)

According to plaintiff, Volpecelli also asked him what ethnicity he was, to which he responded that he is an American citizen. (Compl., ¶ III(E)(2)). Volpecelli then asked plaintiff from where his parents were, to which he responded that they were from the United States and, specifically, the commonwealth of Puerto Rico. (Id.) Plaintiff alleges that Volpecelli then "vociferously stated, 'So, you *Are* Puerto Rican." (Id.) (emphasis in original). According to plaintiff, Volpecelli made further negative references to both his ethnicity and physical disabilities. (Id.) Plaintiff was then escorted to another room for processing, i.e., photographs

4

and fingerprinting, and his walking cane, braces and eyeglasses were confiscated. (Id.)

After processing, plaintiff was placed "shoeless and bare foot [sic], into one of a row of cold temperature cells * * *." (Compl., ¶ III(E)(2)). According to plaintiff, "John Doe # 1" "vociferously informed [him], 'You ever see the Untouchables? Remember the line, "stupid WOP, you brought a gun to a knife [sic] fight. That's what you did.""" (Id.) Plaintiff alleges that "[a] short time later, another uniformed police officer, John Doe # 2 * * * insisted * * * that [he] sign a paper" and threatened that if he refused, he "would not receive medical attention and [his] incarceration would last even longer." (Id.) According to plaintiff, he "informed John Doe # 2 that without his eyeglasses, he [was] unable to view the paper, and would not sign [it]." (Id.) Plaintiff alleges that he was detained for approximately twenty-eight (28) hours, during which time he was not permitted to speak to an attorney and was denied access to medical attention. (Id.)

On October 19, 2008, Volpecelli filed a felony complaint in the First District Court of the County of Suffolk charging plaintiff with assault in the second degree (N.Y. Penal Law § 120.05(2)), a Class D felony, for striking Shaughnessy in the head with a metal fire extinguisher ('the criminal proceeding"). (Compl., Ex. A).

On or about October 20, 2008, Legal Aid was assigned to represent plaintiff in the criminal proceeding and a Stay Away Order of Protection was issued in favor of Shaughnessy, effectively banning plaintiff from his residence. (Compl., ¶ III(E)(3), Exhibit B). According to plaintiff, he was banned from his home for a period of ten (10) months and two (2) weeks. (Id.)

Plaintiff alleges that on or about December 12, 2008, Bennett, his assigned Legal Aid counsel, "in a public corridor of the court made mockery [sic] of [him] including vociferous

statements of '. . . You don't know how the game is played here. . .'." (Compl., ¶ III(E)(4)).

According to plaintiff, when he requested to speak with Bennett in private "due to the

humiliation of having been a victim of sexual assault; and the embarrassment of false arrest,"

"Bennett became even more boisterous stating '. . . hey, you're in the same boast [sic] as all these

people. . .'." (Id.) Plaintiff further alleges that Bennett also made an "inference of ethnic

disapproval of [him], regarding [his] knowledge and use of English grammar and pronunciation."

(Id.)

On or about February 25, 2009, the felony assault charge against plaintiff was reduced by

prosecutor's Information to three (3) counts of misdemeanor assault in the third degree. (See

Compl., Ex. B).

On or about March 3, 2009, Sheehan-Houston, another Legal Aid attorney, was assigned

as plaintiff's defense counsel in the criminal proceeding. (Compl., ¶¶ III(E)(4) and (5)).

According to plaintiff, Sheehan-Houston "maliciously attempted to publicly try the matter within

the public corridors of the Suffolk County, New York State First District Court House,

humiliating, and embarrassing [him]." (Compl., ¶ III(E)(5)). Plaintiff further alleges that

Sheehan-Houston refused to privately consult with him; refused to urge the District Attorney of

Suffolk County to review his allegations of assault, false arrest and imprisonment and civil rights

violations; "publicly shout[ed] the falsity [of his claims]; and/or that [he] was insisting that she *

* * make terrorist threats against the District Attorney of Suffolk County, NY;" "deliberately

acted and publicly show[ed] a lack of professional behavior;" refused to relay "pertinent

information by and/or of the court to [him];" referred to herself as acting as an agent for the

District Attorney; willfully delayed forwarding evidence to the District Attorney; violated his

attorney-client privilege; deliberately "sull[ied] [his] reputation;" and threatened him with incarceration if he did not advise her of what he discussed with investigators from the United States Department of Justice ("DOJ"). (Id.)

Plaintiff further alleges that on or about June 16, 2009, "within the 4th floor corridor near court room D-45 of the First District Court, Central Islip, NY, Sheehan-Houston, using a child-like tone and inflections, sarcastically had informed [him] that, 'If you take the *plea* you'll get your life back, you won't have to come to court anymore' (knowing that the plaintiff is disabled and suffers physical difficulty, discomfort and pain); and that the plaintiff was 'looking for a lot of trouble' if [he] did not 'drop' the matter of his being the victim of a [sic] assault, sexual assault, false arrest." (Compl., ¶ III(E)(6)) (emphasis in original). According to plaintiff, when he refused, Sheehan-Houston "became boisterous and animated" and sought assistance from Bennett. (Id.) Plaintiff alleges that Bennett told him that he knew plaintiff "want[ed] justice" and that the District Attorney knew "he ha[d] a weak case, but [sic]." (Id.) According to plaintiff, when he attempted to respond to Bennett, Sheehan-Houston interrupted him and "vociferously promoted and defended the District Attorney's actions" and made "threats against [him], [his] safety and freedom." (Id.) When plaintiff informed Sheehan-Houston that he did not want her to be his counsel, Sheehan-Houston "boisterously publicly responded, and continued to repeat, 'Oh Yea? Well that's too bad! I am your lawyer- *Tough Luck! You're going to jail!*'" (Id.) (emphasis in original).

Judge Filiberto denied plaintiff's subsequent request to relieve Sheehan-Houston as his assigned counsel, but plaintiff refused to meet with Sheehan-Houston thereafter unless a third party was present or the conversation was recorded. (Compl., ¶ III(E)(6)). Plaintiff subsequently

met with Laudner, Sheehan-Houston's supervisor, who, according to plaintiff, agreed to replace Sheehan-Houston as his defense counsel once plaintiff signed an affidavit "arrang[ing] the dismissal of defendant Sheehan-Houston as defense counsel." (Compl., ¶ III(E)(6) and (7)). Plaintiff requested that Karen A. Bent ("Bent"), who had represented him at his arraignment on October 20, 2008, be assigned as his counsel and agreed to meet Laudner at the Legal Aid offices on September 23, 2009. (Compl., ¶ III(E)(7)).

Plaintiff alleges that on or about September 23, 2009, at 8:30 a.m., he met with Laudner in the fourth floor public corridor of the Legal Aid offices. (Compl., ¶ III(E)(8)). According to plaintiff, Laudner handed him three (3) "versions" of a "Motion to Dismiss Counsel" authored by Laudner and told him to "Just sign it, and leave it with me." (Id.) Plaintiff refused to sign the motion because he "was falsely faulted" and informed Laudner that he "would not attach his signature to misquotes, inaccuracies, and falsehoods; nor would [he] sign such document(s) without proper and legal notary procedure(s)." (Id.) Plaintiff further alleges that Laudner hesitantly informed him that Bent was no longer employed by Legal Aid and that Bent would contact him, but she never did. (Id.)

Plaintiff alleges that on October 12, 2009, Shaughnessy made "a 2nd criminal attempt to approach [him] near or about the area of 319 Broadway Plaza located (Park Avenue and Broadway in Huntington, NY)." (Compl., ¶ III(E)(10)). According to plaintiff, the SCPD was summoned "regarding a continued hate crime incident, by the same assailant," but the two responding officers from the Second Precinct refused to detain Shaughnessy or take him into custody, or to investigate plaintiff's claims. (Id.) Plaintiff alleges that the two responding officers shook hands with Shaughnessy when they left, then drove plaintiff home. (Id.)

On or about October 20, 2009, Peter Christopher Stein ("Stein"), a former assistant district attorney for Suffolk County who was not associated with Legal Aid, was assigned as plaintiff's defense counsel in the criminal proceeding. (Compl., ¶ III(E)(12)). Plaintiff subsequently discharged Stein. (Id.) Plaintiff alleges that he "has been forced to act as his own defense counsel, against his will and under protest * * *." (Id.)

B.     Procedural History

On December 4, 2009, plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against the County defendants, the Legal Aid defendants, the State defendants and Shaughnessy, alleging violations of his constitutional rights. Specifically, plaintiff asserts claims for false arrest and imprisonment against Shaughnessy, Volpecelli and "John Doe # 1;" for assault and commission of a hate crime as against Shaughnessy; for accessorial liability, aiding and abetting and/or conspiracy as against all defendants; and for violations of his Fifth and Fourteenth Amendment due process rights and rights secured under the Eighth Amendment to the United States Constitution as against all defendants. (Compl., ¶¶ III(E)(3) and 13, V(G)(17) and (21)). In addition, plaintiff alleges that the SCPD has policies of treating hate crimes as freedom of speech issues, as opposed to crimes; of not enforcing hate crimes committed against the disabled; and of basing individual arrests "on preferences of ethnicity, religious affiliation(s), skin pigmentation(s), and/or physical disabilities." (Compl., ¶¶ V(G)(16) and (18)). Plaintiff further alleges that Bennett, Sheehan-Houston, Laudner and their associates presumed him guilty; "act[ed] as agents of and in coercion [sic] with the District Attorney of Suffolk County[;]" and refused to properly defend him." (Compl., ¶ III(E)(4)).

Plaintiff alleges that Paterson and Cuomo, as the New York State Governor and Attorney General, respectively, at all relevant times, were aware of the SCPD's and District Attorney's repeated violations of civil rights and "willfully ignored" them. (Compl., ¶¶ V(G)(18) and (19)). Plaintiff further alleges that Levy, as "Chief Legislator of Suffolk County," "has maintained an environment that is hostile to those residents of Suffolk County whom are of Latin descent;" has permitted the civil rights violations against "persons of Latin heritage" to occur without intervention; and "has knowingly aided civil rights violations and hate crimes against persons of Latin descent within Suffolk County, ignoring the crimes that were perpetrated against the plaintiff, and other such crimes against other victims." (Compl., ¶ V(G)(20)).

Plaintiff seeks: (1) judgment declaring that his civil rights have been violated; (2) injunctive relief ordering defendants "to cease and desist the violation(s) of [his] civil rights, and the false and malicious prosecution against [him] * * *;" (3) compensatory damages in the amount of two hundred fifty million dollars ($250,000,000.00) "against each defendant, jointly and severally;" (4) punitive damages in the amount of fifty million dollars ($50,000,000.00) against each defendant; and (5) costs. (Compl., ¶¶ VI(H)(22)-(28)).

The Legal Aid defendants and State defendants separately move pursuant to, *inter alia*, Rules 12(b)(1) and (6) of the Federal Rules of Procedure to dismiss the complaint as against them for lack of subject matter jurisdiction and failure to state a claim, respectively.

II.     ANALYSIS

    A.      12(b)(1)[2]

---

[2] Since a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction, see Sinochem International Co. Ltd. v. Malaysia International Shipping

1.    Standard of Review

Federal courts are courts of limited jurisdiction, see Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 397 (2d Cir. 2009), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil, 545 U.S. at 552, 125 S.Ct. 2611 (holding that federal courts may not exercise jurisdiction absent a statutory basis); County of Nassau, N.Y. v. Hotels.com, LP, 577 F.3d 89, 91 (2d Cir. 2009) (holding that federal courts lack power to disregard the limits on their jurisdiction imposed by the Constitution or Congress). Lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the court *sua sponte*. Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003); Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000); see also Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region, 130 S.Ct. 584, 596, 175 L.Ed.2d 428 (2009) ("[s]ubject-matter jurisdiction, * * * refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." (internal quotations and citations omitted)). If a court lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

"In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to

Corp., 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007), I must necessarily decide the branches of the Legal Aid defendants' and State defendants' motions seeking dismissal pursuant to Rule 12(b)(1) prior to rendering any determination on the branches of their motions seeking dismissal pursuant to Rule 12(b)(6), which requires a decision on the merits of the case.

11

recover under the laws of the United States." <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1055 (2d Cir.1993) (quoting <u>Goldman v. Gallant Securities, Inc.</u>, 878 F.2d 71, 73 [2d Cir.1989]).  Although when deciding a jurisdictional motion, the court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, <u>Natural Resources Defense Council v. Johnson.</u>, 461 F.3d 164, 171 (2d Cir. 2006), it also may look beyond the allegations of the complaint and "examine evidence outside of the pleadings." <u>Hamm v. U.S.</u>, 483 F.3d 135, 137 (2d Cir. 2007).  The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists.  <u>Id.</u>

> 2.    The Legal Aid Defendants' Motion

> a.    Standing

The Legal Aid defendants contend, *inter alia*, that plaintiff lacks standing to pursue his claims against them because he has not alleged an injury in fact.[3]

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" <u>Carver v. City of New York</u>, 621 F.3d 221, 225 (2d Cir. 2010) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); <u>see also</u> <u>Elk Grove Unified School District v. Newdow</u>, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.")  "A plaintiff must demonstrate standing for each claim and form of relief sought." <u>Carver</u>, 621 F.3d at 225 (alteration, quotations and citation omitted).

---

[3] Although the Legal Aid defendants also argue that plaintiff's claims against them are not ripe for review, they fail to exposit any basis in support of that argument.

In order to establish Article III standing, the plaintiff must demonstrate "(1) that he 'suffered an injury-in-fact- an invasion of a legally protected interest which is [a] concrete and particularized . . . and [b] actual or imminent, not conjectural or hypothetical'; (2) that there was a 'causal connection between the injury and the conduct complained of'; and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Carver, 621 F.3d at 225 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); see also Elk Grove, 542 U.S. at 12, 124 S.Ct. 2301 (holding that the plaintiff must show "that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress.") "The party invoking federal jurisdiction bears the burden of establishing the[] elements [for standing]." Lujan, 504 U.S. at 561, 112 S.Ct. 2130. Where, as here, "standing is challenged * * * on the basis of the pleadings," the court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." Carver, 621 F.3d at 225. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct" are sufficient. Lujan, 504 U.S. at 561, 112 S.Ct. 2130.

The Legal Aid defendants' argument misconstrues the issue of standing with the distinct issue of whether plaintiff has a cognizable cause of action against them. See, e.g. Morrison v. National Australia Bank Ltd., 130 S.Ct. 2869, 2877, 177 L.Ed.2d 535 (2010) (holding that subject matter jurisdiction "presents an issue quite separate from the question whether the allegations that plaintiff makes entitle him to relief."); Carver, 621 F.3d at 226 ("The standing question is distinct from whether [the plaintiff] has a cause of action.") Plaintiff has standing to assert his Section 1983 claims against the Legal Aid defendants insofar as the complaint,

liberally read, alleges an injury, i.e., an invasion of his legally protected interest, *inter alia*, in the right to due process, caused by the Legal Aid defendants' purported participation in a conspiracy to violate his constitutional rights, which may be redressed, *inter alia*, by monetary damages in the event of a decision in favor of plaintiff. The Legal Aid defendants' contention that plaintiff lacks standing because they "did not represent him at the time he alleges he was assaulted, falsely arrested or falsely imprisoned," (Memorandum of Law in Support of the Legal Aid Defendants' Motion to Dismiss Plaintiff's Complaint [Legal Aid Mem.], p. 6), entirely ignores, *inter alia*, plaintiff's due process claims relating to the criminal proceeding against him. Moreover, the fact that the Legal Aid defendants no longer represent plaintiff in the criminal proceeding does not affect plaintiff's standing with respect to his claims seeking retroactive relief, i.e., compensatory and punitive damages. Accordingly, the branch of the Legal Aid defendants' motion pursuant to Rule 12(b)(1) seeking dismissal of plaintiff's damages claims against them based upon conduct occurring during the period between October 20, 2008, when the Legal Aid defendants were assigned to represent plaintiff, and October 20, 2009, when new counsel was assigned to represent plaintiff in the criminal proceeding, is denied.

On the other hand, to the extent plaintiff seeks prospective relief against the Legal Aid defendants, those claims are dismissed for lack of standing because plaintiff cannot "show a likelihood that he will be injured in the future," Carver, 621 F.3d at 228, by any conduct of the Legal Aid defendants since the Legal Aid defendants no longer represent him in the criminal proceeding. Accordingly, the branch of the Legal Aid defendants' motion pursuant to Rule 12(b)(1) seeking dismissal of plaintiff's claims against them for injunctive relief is granted and those claims are dismissed without prejudice as against the Legal Aid defendants for lack of

14

standing. [4]

### b.     State Law Claims

Since this Court has subject matter jurisdiction over plaintiff's federal claims seeking damages pursuant to 28 U.S.C. § 1331 against the Legal Aid defendants, and plaintiff's state law claims against the Legal Aid defendants are related to his federal claims against those defendants, this Court has supplemental jurisdiction over plaintiff's state law claims against the Legal Aid defendants pursuant to 28 U.S.C. § 1367(a). The Legal Aid defendants' argument that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims against them pursuant to 28 U.S.C. § 1367(c) mistakes the issue of subject matter jurisdiction with the distinct issue of "whether a court chooses to exercise that jurisdiction." Carlsbad Technology, Inc. v. HIF Bio, Inc., 129 S.Ct. 1862, 1866, 173 L.Ed.2d 843 (2009). As the Supreme Court held:

> "[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. See §§ 1367(a), (c). A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. See § 1367(c) * * *; [additional citations omitted]. As a result, the (district) court's exercise of its discretion under § 1367(c) is not a jurisdictional matter. * * *" (internal quotations and citation omitted).

Id. at 1866-7. Accordingly, the branch of the Legal Aid defendants' motion pursuant to Rule 12(b)(1) seeking dismissal of plaintiff's state law claims against them for lack of subject matter jurisdiction is denied.

### 2.     The State Defendants' Motion

---

[4] In light of this determination, it is unnecessary to address the Legal Aid defendants' abstention contention.

The Eleventh Amendment to the United States Constitution bars suits seeking retroactive relief, including monetary damages, in a federal court by private parties against a state or one of its agencies, absent consent to suit or an express statutory waiver of immunity. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 362, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908). In addition, the Eleventh Amendment bars claims for retroactive relief against state officials when "the state is the real, substantial party in interest." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed.2d 389 (1945), overruled on other grounds by Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)). "Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" Id. (quoting State of Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963)).

Plaintiff's claims for monetary damages against both Paterson and Cuomo, as governor and attorney general, respectively, of the State of New York at all relevant times, are in their official capacity and, thus, are actually claims against the State of New York, see, e.g. Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993), which has not consented to suits in federal court. Moreover, Section 1983 does not abrogate a state's sovereign immunity. Quern v. Jordan, 440 U.S. 332, 340-345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Mamot v. Board of Regents, 367 Fed. Appx. 191, 192 (2d Cir. Feb. 22, 2010) (summary order). Thus, plaintiff's claims for

16

monetary damages against Paterson and Cuomo in their official capacity are barred by the Eleventh Amendment. See, e.g. Halderman, 465 U.S. at 120, 104 S.Ct. 900 (stating that if a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim, the federal court is barred by the Eleventh Amendment from awarding damages against the state treasury); Ford v. Reynolds, 316 F.3d 351, 354-5 (2d Cir. 2003) ("The Eleventh Amendment bars the award of money damages against state officials in their official capacities.")

In addition, the declaratory judgment sought by plaintiff requests no more than an adjudication that the past conduct of the State defendants violated federal law, i.e., he seeks judgment declaring "that the acts and omissions described [in the complaint] *violated* [his] rights under the Constitution and laws of the United States." (Compl., ¶ VI(H)(22)) (emphasis added). "[T]he Eleventh Amendment and the principles governing the issuance of declaratory judgments prohibit the award of a declaration that state officials' prior conduct violated federal law." Rothenberg v. Stone, 234 F.Supp.2d 217, 221 (E.D.N.Y. 2002); see also Green v. Mansour, 474 U.S. 64, 65-66, 73, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). "'[A] declaratory judgment is not available when the result would be a partial '"end run" around' the Eleventh Amendment's bar on retrospective awards of monetary relief.'" Ward v. Thomas, 207 F.3d 114, 120 (2d Cir. 2000) (quoting Green, 474 U.S. at 73, 106 S.Ct. 423); see also Community Health Care Association of New York v. DeParle, 69 F.Supp.2d 463, 472 (S.D.N.Y. 1999) (accord). Since plaintiff's claim seeking a declaratory judgment is not based upon a "claimed continuing violation of federal law," Ward, 207 F.3d at 120, by the State defendants, his declaratory judgment claim against the State defendants is retroactive in nature and, thus, barred by the Eleventh Amendment. See, e.g. Boyland v. Wing, 487 F.Supp.2d 161, 180 (E.D.N.Y. 2007) (holding that absent a continuing

violation of federal law by the state, claims for injunctive, compensatory or declaratory relief against state officials are barred by the Eleventh Amendment); Rothenberg, 234 F.Supp.2d at 221-222 (dismissing the plaintiff's Section 1983 claims on the basis, *inter alia*, that the plaintiff sought only retrospective declaratory relief, i.e. that the defendant's past conduct violated federal law).

Moreover, the Eleventh Amendment also bars suits in federal courts seeking relief, whether prospective or retroactive, against state officials for their alleged violation of state law. See Halderman, 465 U.S. 89, 106, 104 S.Ct. 900; Allen v. Cuomo, 100 F.3d 253, 260 (2d Cir. 1996); see also Carvel v. Cuomo, 357 Fed. Appx. 382, 383 (2d Cir. Dec. 21, 2009) ("[T]he Eleventh Amendment bars federal suits against state officials on the basis of state law.") Since plaintiff does not allege that the State defendants acted *ultra vires*, i.e. without the authority of law, see Florida Department of State v. Treasure Salvors, Inc., 458 U.S. 670, 696-697, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (plurality opinion), any state law claims he asserts against the State defendants are also barred by the Eleventh Amendment.

Although the Eleventh Amendment would not bar claims against the State defendants in their individual capacity, see Hafer v. Melo, 502 U.S. 21, 31 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Ford, 316 F.3d at 356, plaintiff's claims against the State defendants are in their official capacity only and plaintiff does not allege the personal involvement of either State defendant in his complaint. Plaintiff claims that "[t]he enforcement of law(s) have been willfully ignored by the NY State Attorney General's office * * *, (Compl., ¶ 18); and that "[t]he Governor of New York State * * * has and is ignoring, as well as refusing to act, to correct the repeated blatant violations of * * * civil rights" within Suffolk County, (Compl., ¶ 19). Accordingly, the State

defendants' motion pursuant to 12(b)(1) to dismiss plaintiff's federal claims against them seeking retroactive relief, i.e., damages and a declaratory judgment, and state law claims against them for lack of subject matter jurisdiction is granted and those claims are dismissed as against the State defendants without prejudice.

In determining whether the doctrine of Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, avoids an Eleventh Amendment bar with respect to claims seeking equitable relief against state officials acting in their official capacity, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Ford, 316 F.3d at 355 (quoting Verizon Md. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 122 S.Ct. 1753, 1760, 152 L.Ed.2d 871 (2002)); see also In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007). Since plaintiff does not allege an ongoing violation of federal law by the State defendants, particularly since neither Paterson nor Cuomo hold the office in which capacity they are sued any longer, and his claim for injunctive relief specifically excludes any reference to the State defendants, plaintiff's remaining claim against the State defendants seeking injunctive relief is also dismissed without prejudice.

B.    Rule 8(a)

The Legal Aid defendants contend that plaintiff's complaint must be dismissed pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure because it "only asserts general allegations and lacks a short and plain statement of [plaintiff's] claim against [them][,]" and "does not offer any facts demonstrating that [they] violated any right." (Legal Aid Mem., p. 5).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain, *inter*

*alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."

Pleadings must give "fair notice of what the . . . claim is and the grounds upon which it rests" to

enable the opposing party to answer and prepare for trial, and identify the nature of the case. Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007);

see also Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1

(2002). When a complaint fails to satisfy the Rule 8 pleading standard, a district court may

dismiss the complaint on motion or *sua sponte*. Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir.

1995).

Contrary to the Legal Aid defendants' contention, plaintiff's complaint contains sufficient

factual allegations against each of them as to satisfy Rule 8(a)(2)'s pleading requirements.

Accordingly, the branch of the Legal Aid defendants' motion seeking dismissal of the complaint

against them pursuant to Rule 8(a)(2) is denied.


C.     12(b)(6)

        1.     Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is

plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167

L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only

give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests."

Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Arista

Records, LLC v. Doe 3, 604 F.3d 110, 119-20 (2d Cir. 2010)(accord). "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)); see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010), cert. denied, 131 S.Ct. 824 (2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.") However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950; see also Ruston, 610 F.3d at 59 ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible."

21

Arista Records, 604 F.3d 110, 120-1; see also Matson v. Board of Education of City School District of New York, ___ F.3d ___, 2011 WL 70572, at * 14 (2d Cir. Jan. 11, 2011) ("[T]he pleading of additional evidence, beyond what is required to enable the defendant to respond, is not only unnecessary but in contravention of proper pleading procedure.")

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)); see also DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010).


2.      Section 1983 Claims

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State... subjects, or causes to
> be subjected, any citizen of the United States... to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010), cert. denied sub nom Cornejo v. Monn, 131 S. Ct. 158, 178 L.Ed.2d 243 (2010), (quoting Pitchell v. Callan, 13 F.3d

545, 547 (2d Cir. 1994)); see also Briscoe v. LaHue, 460 U.S. 325, 329-330, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)(citation omitted). Generally, attorneys, whether with the Legal Aid Society, court-appointed or privately retained, are not state actors for purposes of Section 1983. See Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); see also Krug v. McNally, 368 Fed. Appx. 269, 269 (2d Cir. Mar. 8, 2010) (affirming dismissal of Section 1983 claims against privately retained attorneys who represented the plaintiff in criminal proceeding on basis that attorneys were not state actors); Brown v. Legal Aid Society, 367 Fed. Appx. 215, 216 (2d Cir. Feb. 23, 2010) (holding that a public defender does not act under color of sate law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding).

Nevertheless, liability may be imposed under Section 1983 upon private individuals who are not state actors pursuant to a conspiracy theory. See Ciambriello v. County of Nassau, 292 F.3d 307, 324-325 (2d Cir. 2002). In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello, 292 F.3d at 324-325; see also Ostensen v. Suffolk County, 236 Fed. Appx. 651, 653 (2d Cir. May 23, 2007). Vague, conclusory and general allegations of conspiracy are insufficient to state a claim under Section 1983. See Ciambriello, 292 F.3d at 324;

Zavalidroga v. Cote, 395 Fed. Appx. 737, 740 (2d Cir. Oct. 6, 2010); Krug, 368 Fed. Appx. at 269-70.

Contrary to the Legal Aid defendants' contention, plaintiff's allegations that they acted as agents of, and in collusion with, the Suffolk County District Attorney in failing to properly defend him in the criminal proceeding by, *inter alia*, withholding evidence and information and attempting to coerce him into pleading guilty and to drop his claims of assault, false arrest and imprisonment, see, e.g. Compl., ¶¶ III(E)(4), (5) and (6), are sufficient at the pleadings stage to state a Section 1983 conspiracy claim against the Legal Aid defendants based upon a conspiracy to deprive him of his due process rights. However, the complaint fails to state a viable claim of conspiracy between the Legal Aid defendants and any state actor with respect to plaintiff's remaining Section 1983 claims. Accordingly, the branch of the Legal Aid defendants' motion pursuant to Rule 12(b)(6) seeking dismissal of plaintiff's Section 1983 claims against them alleging a conspiracy with the District Attorney to violate his due process rights is denied, but that branch of the Legal Aid defendants' motion is otherwise granted and plaintiff's remaining Section 1983 claims against the Legal Aid defendants are dismissed without prejudice. Plaintiff may amend his complaint to replead the Section 1983 claims against the Legal Aid defendants that are dismissed herein in order to assert a viable claim of conspiracy against them **within thirty (30) days from the date this order is served with notice of entry upon him**, or those claims will be deemed dismissed with prejudice.

3.    State Law Legal Malpractice Claim

In New York, a claim for legal malpractice arising out of a criminal proceeding does not

24

accrue until the individual is "able to assert 'his innocence or a colorable claim of innocence,'" Britt v. Legal Aid Society, Inc., 95 N.Y.2d 443, 445, 718 N.Y.S.2d 264, 741 N.E.2d 109 (2000) (quoting Carmel v. Lunney, 70 N.Y.2d 169, 173, 518 N.Y.S.2d 605, 511 N.E.2d 1126); see also Abuhouran v. Lans, 269 Fed. Appx. 134, 135 (2d Cir. Mar. 18, 2008) (summary order), that is, "when the criminal proceeding is terminated, i.e., on the date when the indictment against the plaintiff is dismissed." Britt, 95 N.Y.2d at 445, 718 N.Y.S.2d 264. Thus, in order to state a claim for legal malpractice arising out of a criminal proceeding, the plaintiff must "plead and prove that [his or her] conviction was due to the attorney's actions alone and not due to some consequence of his guilt * * *." Id. at 447 (citations omitted). A cause of action for legal malpractice arising out of a criminal proceeding cannot "accrue while [the] plaintiff's conviction remain[s] a jural fact * * *." Id. (citation omitted). "Accrual occurs 'when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.'" Id. (quoting Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 612 N.E.2d 289). "[A] criminal legal malpractice plaintiff cannot assert innocence while the criminal charges remain pending." Id., at 448, 718 N.Y.S.2d 264.

Any claim against the Legal Aid defendants cannot possibly accrue until plaintiff is able to assert the element of his innocence, i.e., until the criminal proceeding against him is terminated without a conviction, or any conviction is subsequently vacated. Since the criminal charges against plaintiff remain pending, the branch of the Legal Aid defendants' motion seeking dismissal of any state law legal malpractice claim against them is granted and that claim is dismissed without prejudice. See, e.g. Abuhouran, 269 Fed. Appx. at 135 (affirming dismissal of criminal legal malpractice claim for failure to state a cause of action); Hoffenberg v. Meyers, 73

Fed. Appx. 515, 516-7 (2d Cir. Sept. 4, 2003) (amended summary order) (modifying judgment dismissing criminal legal malpractice claim with prejudice to a dismissal without prejudice "[b]ecause it [was] possible that [the plaintiff's] conviction could be overturned in the future.") In the event the criminal proceeding is terminated against plaintiff without a conviction, or any conviction is subsequently vacated, and the federal claims remain pending against the Legal Aid defendants in this court, plaintiff may re-plead his legal malpractice claim against the Legal Aid defendants by serving and filing an amended complaint **within ten (10) days after the termination of the criminal proceeding against him**, or he will be deemed to have waived his right to assert a legal malpractice claim against the Legal Aid defendants in this Court.

4. Remaining State Law Claims

The Legal Aid defendants only seeking dismissal of any other state law claims asserted against them on the basis that this Court should decline to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(c). However, since a federal claim remains as against the Legal Aid defendants, i.e., a Section 1983 claim alleging a conspiracy with the District Attorney to violate plaintiff's due process rights during the criminal proceeding, this branch of the Legal Aid defendants' motion is denied with leave to renew in the event the remaining federal claim against them is subsequently dismissed.

III. Conclusion

For the reasons stated herein: (1) the State defendants' motion pursuant to Rule 12(b)(1) to dismiss plaintiff's complaint as against them is granted and plaintiff's complaint is dismissed

26

in its entirety without prejudice as against the State defendants; (2) the branches of the Legal Aid defendants' motion pursuant to Rule 12(b)(1) seeking dismissal of plaintiff's claims against them for lack of standing are granted to the extent that plaintiff's claims against the Legal Aid defendants seeking injunctive relief are dismissed without prejudice, and those branches of the Legal Aid defendants' motion are otherwise denied; (3) the branch of the Legal Aid defendants' motion seeking dismissal of plaintiff's complaint as against them pursuant to Rule 8(a)(2) is denied; (4) the branches of the Legal Aid defendants' motion seeking dismissal of plaintiff's Section 1983 claims against them pursuant to Rule 12(b)(6) are granted and plaintiff's Section 1983 claims against the Legal Aid defendants are dismissed without prejudice, with the exception of plaintiff's Section 1983 claim against the Legal Aid defendants alleging a conspiracy with the District Attorney to violate his due process rights with respect to the criminal proceeding against him; and (5) the branch of the Legal Aid defendants' motion seeking dismissal of plaintiff's state law legal malpractice claim against them is granted and that claim is dismissed without prejudice.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: February 25, 2011
      Central Islip, N.Y.